O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| FERNANDO ESPINOLA, | § | |
| ERIK ESPINOLA, and | § | |
| JESUS MUNOZ, JR. | § | |
| | § | |
| Plaintiffs | § | |
| | § | CIVIL ACTION L-04-179 |
| vs. | § | |
| | § | |
| CITY OF LAREDO, TEXAS, | § | |
| LUIS F. SOSA, JR., FIRE CHIEF, | § | |
| FERNANDO ALARCON, and | § | |
| HOMERO MARTINEZ, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending is Defendants' Motion to Dismiss.  (Docket No. 7.)
The Court has also reviewed Plaintiffs' Response and Defendants'
Reply to Response.  (Docket Nos. 13 & 14.)

## FACTUAL BACKGROUND

This case arises out of several incidents in 2003, involving
the Laredo Fire Department ("LFD") and its employees.  The
Plaintiffs are District Fire Chief Fernando Espinola ("Chief
Espinola"), his son Erik Espinola, a former cadet at the LFD
Training Academy, and another former cadet Jesus Munoz.  The
Defendants are the City of Laredo ("City"), Fire Chief Luis Sosa,
and two LFD Training Academy instructors, Fernando Alarcon and

1

Homero Martinez.  The current live pleading for the Plaintiffs is a First Amended Complaint.  (Docket No. 5.)

On May 29, 2003, Chief Espinola reported an incident of "workplace violence" to the City's Administrative Services Director.  Chief Espinola alleges this report led Defendant Fire Chief Sosa to reprimand and transfer him from the LFD Training Academy to the Fire Prevention/Arson Division.  Chief Espinola now files a First Amendment retaliation claim against Sosa and the City.  Defendant Sosa contends he is entitled to qualified immunity, while the City argues it cannot be held liable under § 1983, because Chief Espinola fails to allege an official policy or custom of speech retaliation.  Both also argue that Chief Espinola fails to state a First Amendment claim.

In a separate incident, Erik Espinola and Munoz allege Training Academy instructors Martinez and Alarcon, respectively, assaulted each cadet at the LFD Training Academy during skills testing in June 2003.  Martinez and Alarcon contend the Texas Tort Claims Act ("TTCA") prevents a suit against them as individuals.  Alternatively, they raise the defense of official immunity.

Finally, Plaintiff Erik Espinola alleges he was fired in September 2003, because he could not complete training due to a back injury, in violation of the Americans with Disabilities Act

2

("ADA").  The City argues Erik Espinola fails to allege a
disability under the ADA.[1]

In response to Defendants' Motion to Dismiss, Plaintiffs
move for leave to file a Second Amended Complaint that
voluntarily abandons their claims of freedom of association, 42
U.S.C. § 1981 retaliation, negligent failure to train and
negligent use of tangible personal property.  (Docket No. 13.)
That motion is GRANTED.  Accordingly, the Court will not address
any of those claims.  Plaintiffs' Second Amended Complaint also
moots Defendants' argument that the complaint requires more
factual specificity with respect to the assault and ADA claims.

<u>DISCUSSION</u>

<u>FIRST AMENDMENT RETALIATION CLAIM</u>

Defendant Sosa and the City argue that Chief Espinola fails
to allege a violation of his First Amendment right to free
speech.

A First Amendment claim of retaliation requires four
elements: (1) an adverse employment action; (2) speech involving
a matter of public concern; (3) the employee's interest in
commenting on matters of public concern outweighs the employer's

---

[1] Erik Espinola and Munoz have also filed workers'
compensation retaliation claims against the City, which
Defendants have not moved to dismiss.

3

interest in promoting efficiency; and (4) the speech motivated the adverse employment action.  <u>Salge v. Edna Indep. Sch. Dist.</u>, 411 F.3d 178, 184 (5th Cir. 2005).  Defendants argue that Chief Espinola fails to meet the second element.

To determine whether speech addresses a matter of public concern, the court must evaluate the content, form, and context of the statement.  <u>See</u> <u>id</u>. at 186.  The existence of an element of personal interest in the speech does not prevent a finding that the speech as a whole raises issues of public concern.  <u>Id</u>. However, where the plaintiff is motivated by both his role as a citizen and as an employee, the speech at issue must be made primarily in the plaintiff's role as a citizen.  <u>Kennedy v. Tangipahoa Parish Library Bd. of Control</u>, 224 F.3d 359, 366 (5th Cir. 2000).  If the speech would inform the public of more than the fact of an employee's employment grievance, its content may be public in nature.  <u>Id</u>. at 372.  Finally, determining whether the plaintiff speaks primarily as a citizen or employee requires "a precise and factually-sensitive determination."  <u>See</u> <u>id</u>., 224 F.3d at 367.

The present case allegedly arises out of an incident in which instructors Alarcon and a "Captain Vasquez" shoved two unidentified cadets and "verbally threatened" a class of cadets in the classroom on May 27, 2003 at the Training Academy.  The

4

specific content of the threats is not disclosed in Plaintiff's pleadings.  Chief Espinola discovered the incident through his son, Plaintiff Erik Espinola, and subsequently advised the class that they could report the incident.  "One-third" of the class filed a complaint about the incident, including Chief Espinola's son.

Some time on or between May 27 and 29, Chief Espinola notified Deputy Chief Piton about the threats.  However, Piton had already learned of the incident.  On May 29, Chief Espinola reported the incident to the City of Laredo's Administrative Services Director in accordance with the City of Laredo Workplace Violence Policy.  The specific content of his report is unknown. On June 6, 2003, Chief Espinola was called into a meeting at the Central Fire Station where he was questioned about his report to the City Administrative Services Director and reprimanded for making the report.  He was reassigned to the Fire Prevention/Arson Division on June 9, 2003.

Whether Chief Espinola spoke out as an employee or citizen is unclear, based on the current pleadings.  Defendant Sosa argues that Chief Espinola spoke in his role as a supervisory employee, because he was simply relaying complaints made by other City employees concerning their working conditions.  Moreover, Chief Espinola filed his report internally within the City of

5

Laredo, and there is no indication that he filed it against a backdrop of public discussion.

However, the fact that Chief Espinola chose to speak in a nonpublic forum does not remove the speech from constitutional protection.  <u>Wilson v. UT Health Ctr</u>., 973 F.2d 1263, 1270 (5th Cir. 1992).[2]  Further, Chief Espinola maintains that he spoke in his role as a citizen, because the content of his speech concerned "official misconduct."  Although speech calling attention to official misconduct addresses a matter of public concern, the Fifth Circuit has never specifically defined "official misconduct" or "wrongdoing."[3]  <u>Kennedy</u>, 224 F.3d at 374 & n.16.  Not every imaginable instance of alleged misconduct is a matter of public concern.  Chief Espinola suggests that "workplace violence" is always a matter of public concern, but no cites no case law for that assertion.

_____

[2] Defendant Sosa also points to the fact that Chief Espinola admits he was acting in accordance with City policy, when he reported the incident.  However, speech does not indicate a private nature merely because the employee acknowledges a duty to report the misconduct.  <u>Kennedy</u>, 224 F.3d at 370 (citing <u>Wilson</u>, 973 F.2d at 1269)).  Such a rule would "ironically facilitate the suppression of speech through a requirement that the speech be made."  <u>Wilson</u>, 973 F.2d at 1269.

[3] The Fifth Circuit has stated that "official misconduct" or "wrongdoing" "clearly envelopes conduct exposing the state to mere civil liability."  <u>Kennedy</u>, 224 F.3d at 374 n.16.  Here, the City cannot be held liable for an intentional tort under Texas law, *see* CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 2005), and moreover, it appears unlikely that any actionable damages resulted from the verbal threats.

On the current record, especially the content of the threats or Chief Espinola's report being unknown, the Court is unable to perform a "precise and factually-sensitive" determination of whether Chief Espinola's speech was a matter of public concern.[4] Moreover, given that Defendant Sosa has raised the defense of qualified immunity, the Court should allow Chief Espinola to amend his pleadings to satisfy the heightened pleading requirement.  See <u>Kennedy</u>, 224 F.3d at 376.[5]  Thus, the Court will order Chief Espinola to describe (1) the content of his report to the City; (2) the content of the verbal threats allegedly made by Defendant Alarcon and Captain Vasquez; and (3) any further details demonstrating that the incident at issue is of public concern, such as how the incident arose.[6]

---

[4] Defendant Sosa makes the delphic statement that the training academy instructors are not public officials, and therefore the incident does not relate to a matter of public concern.  There being no further elaboration, the Court ignores the assertion.  Further, at least with respect to Defendant Alarcon, this assertion seems to contradict his official immunity defense to Munoz's assault claim.

[5] "Ordinarily, when a complaint does not establish a cause of action in a case raising the issue of immunity, a district court should provide the plaintiff an opportunity to satisfy the heightened pleading requirements of these cases." <u>Kennedy</u>, 224 F.3d at 376.

[6] A copy of Chief Espinola's written report to the City, if it was written and sufficiently detailed, may be sufficient to comply with this directive.

## QUALIFIED IMMUNITY OF SOSA

Before determining whether Sosa is entitled to qualified immunity, the Court must determine whether the challenged conduct amounts to a violation of Chief Espinola's First Amendment rights in the first place.  See Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc), cert. denied, 125 S. Ct. 102 (2004).  Thus, this matter will be deferred.

## MUNICIPAL LIABILITY UNDER § 1983

Although this issue may also become moot, the City argues Chief Espinola has failed to state a First Amendment claim against it under § 1983.  Under § 1983, the City's liability must be based on either (1) an official policy, custom or practice of speech retaliation, see Sharp v. City of Houston, 164 F.3d 923, 935 (5th Cir. 1999); or (2) a final policymaker's decision to retaliate for speech, see Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403-406 (1997).  Here, Chief Espinola acknowledges both theories, but fails to allege which one applies to this case.

## TEXAS TORT CLAIMS ACT, SECTION 101.106(a)

Defendants Martinez and Alarcon argue that the state assault claims against them are barred by the Texas Tort Claims Act ("TTCA").  "The filing of a suit under [the TTCA] against a governmental unit constitutes an irrevocable election by the

8

plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a) (Vernon 2005). Defendants Martinez and Alarcon argue that because Plaintiffs' state law tort claims against them and against the City regard the same subject matter, the assault claims against them must be dismissed. See § 101.106(e).[7]

Section 101.106(a) bars suit against an individual defendant only where a suit against the governmental entity is brought under the TTCA. See Brand v. Savage, 920 S.W.2d 672, 674 (Tex. App.--Houston[1st Dist.] 1995, no writ) (noting that whether the plaintiff's claim against the governmental unit falls under the TTCA is relevant; whether the plaintiff's claim against the employee falls under the TTCA is not).[8]

Two state claims are brought against the City. One is a workers' compensation retaliation claim brought under the Texas Labor Code, not the TTCA. City of Laporte v. Barfield, 898 S.W.2d 288, 299 (Tex. 1995) (holding city's immunity for workers'

---

[7] "If a suit is filed under this chapter against both a governmental entity and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e).

[8] Although section 101.106 has been amended since Brand, there is no reason to believe the current version should be construed differently, based on its plain language.

9

compensation retaliation is waived under the "Political Subdivisions Law," TEX. LABOR CODE ANN. § 504.002(b)).

Second, Erik Espinola's and Munoz's now-abandoned negligence claims against the City were brought pursuant to the TTCA.[9]  The question is whether they arise from the same subject matter as the assault claims against Martinez and Alarcon.  § 101.106(a). Suits only regard the "same subject matter" when they arise out of the same "actions, transactions, or occurrences." Dallas County Mental Health & Retardation v. Bossley, 968 S.W.2d 339, 344 (Tex. 1998).

The negligence claims and assault claims arose from separate incidents that occurred on different dates.  The assault claims arose from an incident in which Martinez and Alarcon shoved Erik Espinola and Munoz and yelled profanities at them after poor skills testing in June 2003.  According to the First Amended Complaint, the negligence claims arose from a separate incident, when unnamed instructors failed to ensure the cadets were properly aligned to maximize height and strength capabilities and

---

[9] The Court must look at all claims ever brought by Plaintiffs against the City for the purpose of section 101.106, because merely filing a claim against a governmental unit triggers its operation.  See Villasan v. O'Rourke, --S.W.3d--, 2005 WL 1242165 at *3 (Tex. App.-Beaumont 2005, no pet. h.) (holding that voluntarily dropping suit against governmental entity, after the government's filing of its motion to dismiss the employee, does not moot motion to dismiss under section 101.106.)

to minimize the possibility of injury.  The incident somehow involved a ladder.  Thus, the assault and negligence claims do not arise from the "same subject matter," and the assault claims against Martinez and Alarcon are not barred by section 101.106(a).

## OFFICIAL IMMUNITY

Defendants Martinez and Alarcon argue they are entitled to official immunity from the assault claims because the claims arise from the performance of their (1) discretionary duties (2) in good faith and (3) while acting within the scope of their authority.  <u>City of Lancaster v. Chambers</u>, 883 S.W.2d 650, 653 (Tex. 1994).  Official immunity is an affirmative defense.  <u>Id</u>. Thus, the burden is on the defendant to establish all elements of the defense.  <u>Id</u>.  Here, Defendants merely state in a conclusory fashion that Erik Espinola and Munoz's allegations "clearly" fall within the official immunity doctrine.  This is insufficient to obtain dismissal on the pleadings.

## DISABILITY DISCRIMINATION CLAIM

The City argues Plaintiff Erik Espinola's complaint fails to allege that he is unable to work a broad range of jobs and thus fails to state a claim under the ADA.

In an employment discrimination case, a plaintiff need not allege a prima facie case to overcome a Rule 12(b)(6) motion to

11

dismiss.  <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 509-510 (2002).
Rule 8(a) requires only a short and plain statement of the facts
to sufficiently state a claim for employment discrimination.  <u>Id</u>.
at 512-513.  The facts must give the defendant fair notice of the
plaintiff's claim and the grounds the claim rests upon.  <u>Id</u>.
Because in <u>Swierkiewicz</u>, the complaint detailed the events
leading to his termination, provided relevant dates, and included
the ages of at least some of the relevant persons involved with
his termination, defendant had fair notice of plaintiff's age
discrimination claim.  <u>See</u> <u>id</u>. at 514.

Here, the requirements of Rule 8(a) are met.  Erik
Espinola's complaint states he suffered a back injury in June
2003 while performing skills testing at the training academy.  In
September 2003, Fire Chief Sosa fired all cadets who were injured
and unable to continue at the academy, including Erik Espinola,
without an inquiry into whether the injured cadets would be able
to perform as firefighters.  Plaintiff Erik Espinola alleges when
he met with Fire Chief Sosa regarding his termination, Erik
Espinola suffered or was perceived as suffering from a physical
impairment that substantially limited his ability to work.
Additionally, he alleges his oral and written requests for a
reasonable accommodation in a position as a Basic Fire Inspector
were never responded to by Fire Chief Sosa or the City.

12

Accordingly, Erik Espinola's ADA claim will not be dismissed for failure to state a claim.

CONCLUSION

Defendants' Motion to Dismiss is DENIED with respect to the assault and ADA claims.  Although Plaintiffs' Request for Leave to File a Second Amended Complaint is GRANTED, the Court now ORDERS Plaintiffs to file a Third Amended Complaint identifying: (1) further facts demonstrating that Chief Espinola spoke on a matter of public concern (as previously discussed); and (2) under what theory will the City be held liable for violation of Plaintiff Chief Espinola's First Amendment rights.

Although the issue will not affect the outcome of the case, Defendants protest Plaintiffs' suit against Defendants Alarcon, Martinez, and Sosa in their official capacity is redundant, because the City has already been sued.  Plaintiffs are directed to strike such language in the new pleadings.

Plaintiffs are also directed to show cause why the claims of Plaintiff Munoz should not be dismissed without prejudice for lack of jurisdiction.  Nothing indicates any diversity of citizenship between him and the Defendants.  He makes no federal claim.  Instead, he complains of an assault on a certain day by Defendant Alarcon and retaliation for filing a workers' compensation claim.  While Plaintiff Erik Espinola has filed a

13

similar claim, his claim may be heard under the doctrine of supplemental jurisdiction, because he has also filed a federal claim.  On the other hand, Munoz's state claims are not interrelated with Espinola's federal claim and, as stated above, he makes no federal claim of his own.

Plaintiffs must respond to this Memorandum no later than August 5, 2005.

Done at Laredo, Texas, this 19th day of July, 2005.

George P. Kazen
United States District Judge